OPINION
Appellant, the State of Ohio, appeals the decision of the Hamilton Municipal Court granting defendant-appellee, Todd B. Moeller's, motion to suppress evidence.
At about 3:15 p.m. on April 13, 1999, Deputy Jason Rosser of the Butler County Sheriff's Office was on High Street in Hamilton, Ohio at the intersection of High Street and Monument Avenue. Dep. Rosser was waiting for the traffic light to turn green when he observed Moeller's vehicle approaching on Monument Avenue. Dep. Rosser watched as Moeller made a right hand turn onto the High Street bridge. Monument Avenue is a three-lane street, and Moeller turned from the second, or inside, turn lane. When making the turn, Moeller crossed the center line into the oncoming traffic lane on the bridge by at least a tire width. When the light turned green, Dep. Rosser proceeded onto the bridge behind Moeller. Dep. Rosser did not pull Moeller over because he thought that Moeller's older model vehicle might have some minor defect which caused him to cross the center line when turning.
Once over the bridge, Moeller merged over to the "B" Street stoplight. When the light turned green, Moeller turned right onto Park Avenue, a one way street with two lanes and curbside parked cars. Dep. Rosser continued to follow Moeller, twice observing him cross the lane dividing line by a tire width. Moeller was in the left hand lane. Moeller made a left hand turn onto Eaton Avenue, making a slow turn and using his turn signal. Moeller stopped at the red light at the intersection of Eaton Avenue, Main Street and Millville Avenue. When the light turned green, Moeller proceeded onto Millville Avenue. As he approached Ross Avenue, his left tire rode on the center line. At that time, Dep. Rosser turned on his overhead lights and stopped Moeller for traffic violations.
Upon investigation, Dep. Rosser believed that Moeller might be driving while impaired by alcohol or drugs. Moeller failed field sobriety tests and was charged with a violation of R.C. 4511.19(A) (DUI) and R.C. 4301.52
(possession of open container). He was not charged with any other offenses. Moeller filed a motion to suppress, arguing that Dep. Rosser did not have sufficient reason to stop him. After a suppression hearing, the trial court granted the motion, finding that Moeller committed only de minimus traffic violations which did not give reason to stop under State v. Johnson (1995), 105 Ohio App.3d 37. The State appeals, raising a single assignment of error:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN GRANTING APPELLEE'S MOTION TO SUPPRESS THE FRUITS OF AN INVESTIGATIVE STOP AND DETENTION FOR THE REASON THATTHERE [sic] WAS NO REASONABLE, ARTICULABLE SUSPICION OF ANY OFFENSE PRESENT AT THE TIME OF THE STOP.
 In its assignment of error, the State contends that the trial court used the incorrect standard when granting Moeller's motion to suppress. The State argues that Dep. Rosser had probable cause to believe traffic violations had occurred, thus justifying the stop.
Before turning to the central issue in the instant case, this court must make one important observation. This court has found numerous opinions unclear as to what standard is appropriately applied to traffic stops, or more appropriately, to a police officer's initial act of pulling over a motorist. The apparent confusion over what standard applies to a given traffic stop is an important one because there are actually two types of "traffic" stops, and each has a different constitutional standard applicable to it.
First is the typical noninvestigatory traffic stop, wherein the police officer witnesses a violation of the traffic code, such as crossing over the center line of a road, and then stops the motorist for this traffic violation. Second is the investigative or "Terry" stop, wherein the officer does not necessarily witness a specific traffic violation, but the officer does have sufficient reason to believe that a criminal act has taken place or is occurring, and the officer seeks to confirm or refute this suspicion of criminal activity. See Terry v. Ohio (1968),392 U.S. 1, 21, 88 S.Ct. 1868, 1879-1880. A noninvestigatory traffic stop must be supported by probable cause, which arises when the stopping officer witnesses the traffic violation. See Whren v. United States
(1996), 517 U.S. 806, 810, 116 S.Ct. 1769, 1772; Pennsylvania v. Mimms
(1977), 434 U.S. 106, 109, 98 S.Ct. 330, 332. By contrast, an investigatory Terry stop is proper so long as the stopping officer has "reasonable articulable suspicion" of criminal activity. Terry,392 U.S. at 21, 88 S.Ct. at 1879-1880.
The confusion in the courts seems to be due, at least in part, to one sentence in Dayton v. Erickson (1996), 76 Ohio St.3d 3, and the improper application of the Terry standard to non-investigative traffic stops. InErickson, the Supreme Court of Ohio stated:
 we conclude that where an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid regardless of the officer's underlying subjective intent or motivation for stopping the vehicle in question.
 76 Ohio St.3d at 11-12. Some courts have used this language to hold that an officer may stop a motorist for noninvestigative traffic purposes, such as issuing a citation, where the officer has only a reasonable articulable suspicion, rather than probable cause, that a traffic offense has occurred.
However, in Whren, the United States Supreme Court specifically stated:
 An automobile stop is thus subject to the constitutional imperative that it not be "unreasonable" under the circumstances. As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.
 517 U.S. at 810, 116 S.Ct. at 1772. Thus, probable cause is the standard applicable to noninvestigatory traffic stops. Reasonable articulable suspicion justifies only an investigatory Terry stop, where the officer seeks to investigate suspected criminal activity. Unlike the typical traffic stop, in which there is a clear traffic violation, a Terry stop revolves around suspected criminal activity which requires investigation.
The above-quoted Erickson language does not lower the standard for an investigatory Terry stop. Rather, it only restates the syllabus ofErickson — that the objective facts surrounding the stop, not the officer's subjective motivations, govern whether probable cause or reasonable articulable suspicion, whichever is applicable, justifies the stop.
Turning now to the instant case, when ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to evaluate the credibility of witnesses and resolve questions of fact. State v. Clay (1973), 34 Ohio St.2d 250, 251. In reviewing the decision of a trial court on a motion to suppress, the appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Retherford (1994),93 Ohio App.3d 586, 593, appeal dismissed, 69 Ohio St.3d 1488. Accepting such facts as true, the appellate court must then independently determine, as a matter of law, and without deference to the trial court's conclusion, whether the facts satisfy the applicable legal standard.Id.
The cause for a noninvestigatory traffic stop has been succinctly stated by the Supreme Court of Ohio: "Where a police officer stops a vehicle based upon probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution[.]" Erickson, 76 Ohio St.3d at syllabus. It should be noted that the Supreme Court stated only that probable cause need be found, not that, upon investigation, it be confirmed that a traffic offense occurred. The establishment of probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Swales v. Ravenna
(N.D.Ohio., 1997), 989 F. Supp. 925, 939, quoting Illinois v. Gates
(1983), 462 U.S. 213, 244 n. 13, 103 S.Ct. 2317, 2335 n. 13. Thus, probable cause is defined in terms of "facts or circumstances `sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense.'" Gerstein v. Pugh (1975), 420 U.S. 103, 111,95 S.Ct. 854, 861, quoting Beck v. Ohio (1964), 379 U.S. 89, 91,85 S.Ct. 223, 225.
In the instant case, Moeller asserts that he committed only de minimus
traffic violations which did not provide a reason to stop him, because no reasonable officer would have stopped a motorist for such violations. He cites State v. Johnson (1995), 105 Ohio App.3d 37, in support of this proposition. However, Johnson is not the proper standard for resolving whether a traffic stop is proper. Erickson expressly rejected the subjective "would," or de minimus, test upon which Moeller relies.76 Ohio St.3d at 11.
In fact, soon after Erickson, the Supreme Court of Ohio reversed by conclusory language this court's judgment in State v. Wilhelm (Apr. 14, 1997), Butler App. No. CA96-12-272, unreported. State v. Wilhelm (1998),81 Ohio St.3d 444. This court's opinion in Wilhelm relied upon Johnson
and found that the defendant's traffic violations were de minimus and excusable. The Supreme Court's decisions in Erickson and Wilhelm have effectively overruled Johnson. That case is not the proper standard for judging the propriety of a traffic stop, and we now expressly overruleJohnson.
In the instant case, Moeller admits, and the trial court found, that Moeller did cross over or drive upon the center or dividing lines on at least three roads, violating R.C. 4511.25, 4511.31 and 4511.33. Because Dep. Rosser observed these traffic violations, he had probable cause to make a noninvestigatory traffic stop. Even if Dep. Rosser ultimately concluded that Moeller's crossings of the center and dividing lines were excusable, that would not obviate the conclusion that Dep. Rosser had probable cause to believe traffic violations had occurred.
The trial court erred by concluding that Dep. Rosser's traffic stop of Moeller was improper and granting the motion to suppress. The State's assignment of error is sustained.
Judgment reversed and remanded for proceedings consistent with this opinion.
POWELL, P.J., concurs.
WALSH, J., dissents.